IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JASON RAY,

      Plaintiff,

v.                                        No. 15-1015

MADISON COUNTY, TENNESSEE,
*et al.,*

      Defendants.

_____

ORDER CERTIFYING QUESTIONS OF STATE LAW TO THE SUPREME COURT OF
TENNESSEE AND STAYING CASE
_____

*INTRODUCTION AND BACKGROUND*

On January 29, 2015, the Plaintiff, Jason Ray, brought this action against Madison County, Tennessee (the "County"); former County Sheriff David Woolfork; jail administrator Captain Tom Rudder and corrections officer Sergeant Chester Long, Jr., alleging violation of his constitutional rights pursuant to 42 U.S.C. § 1983, as well as false imprisonment in violation of Tennessee law. On March 16, 2016, this Court, in an order granting in part and denying in part a motion for summary judgment, dismissed all claims except that against the County under § 1983. (D.E. 36.) During a conference with the Court conducted on June 29, 2016, the parties agreed that certain questions raised in this matter should be certified to the Tennessee Supreme Court.

Rule 23 of the Tennessee Supreme Court Rules permits certification of questions to the state's highest court by the federal courts "when the certifying court determines that, in a proceeding before it, there are questions of law of [the state of Tennessee] which will be determinative of the cause and as to which it appears to the certifying court there is no

controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn. Sup. Ct. R. 23, § 1. "Certification is most appropriate when the question is new and state law is unsettled." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (quoting *Transam. Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995)) (internal quotation marks omitted). However, "federal courts generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Id.* (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)) (internal quotation marks omitted). As the Tennessee Supreme Court has noted, "[r]ather than requiring a federal court to make the law of this state or to abstain from deciding the case until the state courts resolve the point of law, answering certified questions from federal courts promotes judicial efficiency and comity and also protects this state's sovereignty." *Renteria-Villegas v. Metro. Gov't of Nashville & Davidson Cty.*, 382 S.W.3d 318, 320 (Tenn. 2012); *see also Eiswert v. United States*, 619 F. App'x 483, 486 (6th Cir. 2015).

## STATEMENT OF FACTS

On June 3, 2013, Ray pleaded guilty to theft of property over $60,000, a Class B felony under Tennessee law. Specifically, over a two-year period, the Plaintiff stole money from First Assembly of God Church in Jackson, Tennessee, where he served as secretary, treasurer and youth director, by using his power as treasurer to write checks to himself in amounts ranging from $500 to $600. The judgment issued by the Criminal Circuit Court of Madison County, signed by Circuit Court Judge Donald H. Allen on July 31, 2013, reflected a sentence of ten years with incarceration for eleven months and twenty-nine days and the remainder to be served on supervised probation. The form contained the following statement: "Minimum service prior

to eligibility for work release, furlough, trusty status and rehabilitation programs" followed by "(Misdemeanor Only)" and a blank space for a percentage. Judge Allen had placed "75" in the blank.

Ray began serving his sentence at the Madison County Jail (the "Jail") on July 18, 2013. The disposition sheet presented to Jail officials upon Plaintiff's entry into the facility, signed by Judge Allen, contained no indication that he could not be designated as a trusty or receive trusty credits. On July 23, 2013, the inmate signed an Inmate Worker Policy Contract and, sometime thereafter, began working in the Jail kitchen.

Plaintiff was mistakenly released from the Jail in October 2013 due to a miscalculation of his sentence by a corrections officer. Judge Allen became aware of the release and contacted Jail personnel, directing Long to return Ray to the facility to serve the remainder of his sentence. He further advised Long that, pursuant to the sentence, the inmate was not to receive the so-called "two for one" credits referred to in Tennessee Code Annotated § 41-2-146(b). Rudder and Long met with Judge Allen, who explained that, pursuant to his order, Ray was not entitled to work credits until he had served seventy-five percent of his sentence.

Ray returned to the Jail and continued to work as a trusty. On November 24, 2013, his attorney moved for a suspension of the balance of his sentence or, in the alternative, for work release. During a hearing at which the inmate was present, Judge Allen denied the motion on the grounds that Ray was not permitted to receive work credits until he had served seventy-five percent of his sentence. The judicial officer stated from the bench as follows:

> Now, I want to make sure it's clear too, he's not eligible for any type of work release credits. He's not eligible for any type of trust[y] credits. The only credits that he can earn are good behavior credits. That's the reason it's listed at 75 percent. So, you know, once he's served a minimum of nine months in jail then if he's behaved himself in jail then the sheriff could give him good behavior credits and let him out on this 11 months and 29 day period of shock incarceration. You

know, that was the intent of the Court.  That's the Judgment of the Court and I still feel like that's the proper sentence.

The original judgment was not amended and Judge Allen's decision was not appealed.  After the hearing, Plaintiff was again returned to the Jail kitchen as a trusty, where he remained until his release.

## ASSERTIONS OF THE PARTIES

Contentions of the Plaintiff.

Ray argues that the sheriff is the final policymaker for law enforcement activities in the County, including the care and custody of inmates.  He avers that the administration of the Jail, including responsibility for its operation, management, inspection, and control, was delegated by the sheriff to Rudder, the Jail administrator.  Plaintiff also maintains that Rudder and his staff were responsible for designating individuals as inmate workers, and it was their responsibility to apply work program credits once earned.  Any questions about the eligibility of the inmate to work, or the application of work credits, were ultimately resolved by Rudder.  Ray argues that his liberty interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution was violated when he was placed in a work program, which provided a benefit to the Jail, but was denied work program sentence credits required by Tennessee law.

The Plaintiff was sentenced to "split confinement" pursuant to Tennessee Code Annotated § 40-35-306.  Under Tennessee Code Annotated § 41-2-147, the sheriff or his designee had the authority to place split confinement inmates in work programs.  Ray submits that eligibility to participate in work programs is determined "pursuant to [the] Sections" under which the inmate is sentenced.  The split confinement statute that formed the basis for his sentence -- § 40-35-306 -- contains no eligibility restrictions for a felony offender who is ordered to serve time in a local jail.  He insists, therefore, that he was eligible to work and was, in fact,

placed in a work program pursuant to the decision of Jail personnel. Tennessee Code Annotated § 41-2-147(a) states explicitly that only eligible inmates are authorized to be placed in such programs. It is Plaintiff's position that, despite the fact he was sentenced under § 40-35-306, he was immediately eligible to work and, in fact, was put to work, and that Jail officials denied him duly earned work credits to which he was entitled by law.

In addition, Plaintiff asserts that the Jail had no policies or procedures to resolve sentencing conflicts involving disputes over work credits. Jail officials knew Judge Allen had tried to place misdemeanor eligibility requirements on Ray, who was sentenced as a felony offender. Notwithstanding their knowledge that a dispute or conflict in work credits existed, Jail officials put him to work, intending not to give him the credit to which he was entitled. The denial of his work credits significantly affected his release date and deprived him of his statutory liberty interest and his constitutional right to due process. Plaintiff argues that the County's final policymakers made a deliberate decision to place him in a work program on three (3) occasions: (1) within days of entering the Jail; (2) when he voluntarily returned to the Jail after being mistakenly released; and (3) after Judge Allen ruled on his motion to suspend the balance of his sentence.

In this case, the Plaintiff has relied upon the unreported Tennessee Court of Criminal Appeals' decision in *State v. Coley*, No. W2012-01122-CCA-R3-CD, 2013 WL 2423932 (Tenn. Ct. App. June 3, 2013), which discussed the interplay between Tennessee Code Annotated § 40-35-302 and the work credit statutes. Coley was convicted of felony and misdemeanor offenses by the same judge who sentenced Ray. *Coley*, 2013 WL 2423932, at *1. Typed under the heading "Special Condition" on the judgments for misdemeanor convictions was a requirement that incarceration be served in the Madison County jail rather than the county's penal farm and

that he was not eligible for work release or "any other special jail credits." *Id.* Handwritten on one of the misdemeanor judgments was added "(other than good behavior credits)." *Id.* On direct appeal, Coley argued that the trial court lacked authority to place restrictions on the earning of credits and the manner in which they were earned. *Id.* Specifically, he asserted that he should have been entitled to sentence credits under § 41-2-147. *Id.*

The appellate court interpreted §§ 40-35-302 and 41-2-147 "to provide for a sheriff in whose custody a defendant is placed, to have the discretion and authority to determine if the defendant can participate in work related programs pursuant to [§] 41-2-147 and receive the '2 for 1' sentence credits allowed by subsection (b) of that statute." *Id.* at *3. As § 41-2-147 "clearly delineates the sheriff's authority as it relates to inmates," the court found it "error for the trial court to impose a special condition in the misdemeanor judgments which in effect prohibited the sheriff of Madison County from carrying out his statutory responsibilities as to [the] [d]efendant, as they relate[d] to [§] 41-2-147." *Id.* (emphasis omitted). *Coley* has not been cited in any subsequent cases.

Ray maintains that, under § 40-35-302, § 41-2-147 and *Coley*, he was eligible to be placed in a work program at the discretion of County officials. Once a trusty, he was entitled to two-for-one credit. Further, based on *Coley*, he insists that it was "well-settled" and "abundantly apparent" to Jail officials in July 2013 that their statutory responsibility was clearly defined by Tennessee statute and that, despite Judge Allen's order and instructions, discretion in matters involving an inmate's participation in work crews and receipt of credits for performing such work lay solely with the County official.

Contentions of the Defendant.

The County denies that its policies and procedures led to a violation of Plaintiff's constitutional rights or that he should have earned any credits for work as ordered by Judge Allen. Defendant argues that it is the policy of the County sheriff's department to appropriately calculate inmates' release dates, correctly apply jail credits, and timely release them pursuant to Tennessee state statutes, cases, Attorney General Opinions, and in accordance with the judgments of the state courts. The sheriff's department has a legal obligation to carry out the lawful judgments and instructions of the courts. When an inmate's judgment is unclear, it is the policy of the sheriff's department to contact defense counsel, the district attorney and the presiding judge to discuss the inmate's appropriate sentence in order to ensure the proper sentence is entered into the system and appropriately carried out. It is Defendant's position that it is also its policy to never hinder an inmate's ability and right to appeal or legally challenge his judgment or the orders of the criminal courts. Such policies ensure that County officials timely release inmates as well as appropriately allow them to challenge their sentence if they desire to do so.

The Defendant insists that, in this case, these policies were fully followed and carried out so that Plaintiff suffered no constitutional deprivation. In not applying trusty credits to Ray's sentence, it was simply following and carrying out the explicit orders and instructions of the sentencing judge. In November 2013, it became apparent that there was some confusion about Ray's appropriate sentence pursuant to the orders of the state court. In accordance with the County's policy, Rudder and Long went to Judge Allen's office to discuss Plaintiff's sentence in an effort to ensure that they appropriately calculated his sentence and understood the orders of the court. Judge Allen discussed his judgment with the two, pointed to the provision in the

judgment that stated Plaintiff was not entitled to "trusty status" until he served seventy-five percent of his sentence and explained that, pursuant to that language, the inmate was not entitled to receive trusty credits by working until he served seventy-five percent of his sentence. The County insists that Plaintiff nonetheless voluntarily chose to continue working in the jail due to other benefits he received for working.

The County also maintains that, pursuant to its policies and procedures, it did nothing to prevent Plaintiff from challenging Judge Allen's ruling by either appealing his judgment or filing an appropriate motion with the trial court regarding his ability to earn trusty credits. The Defendant submits that these facts do not lead to a conclusion that its policies, or lack thereof, caused or led to any constitutional deprivation of Ray.

The Defendant does not dispute that a county official has a duty to calculate sentence credits or that inmates eligible for trusty status and trusty credits who then work as trusties at the Jail are generally entitled to two-for-one credits. Its position is that nothing prohibits a judge from forbidding an inmate from receiving such credits. The County points to an unreported Tennessee Court of Appeals case, *State v. Lewis*, No. M2004-02450-CCA-R3-CD, 2006 WL 1816317 (Tenn. Ct. App. June 28, 2006), as incongruous with *Coley* on the question at issue in this case. Lewis was convicted of driving under the influence. *Lewis*, 2006 WL 1816317, at *1. In the judgment, the trial judge ordered that his sentence be served at 100 percent before he would be eligible for work release, furlough, trusty status or rehabilitation programs. *Id.* The appellate court stated:

> We construe the phrase "has become eligible for work-related programs . . ." to mean that the inmate may be authorized to participate in such programs only after he or she has served the fixed percentage of the sentence as set by the court. Thus, the trial court controls the eligibility to participate in these programs to the extent that the court fixes the percentage of confinement required before participation in the "two for one" work programs is permitted.

*Id.* at *7; *see also* Tenn. Handbook Series: DUI:  Crime & Consequences in Tenn. § 8.12 (2015-16 ed.) ("[t]he phrase 'has become eligible for work-related programs' has been interpreted to mean that the inmate may be authorized to participate in such programs only after he or she has served the fixed percentage of the sentence as set by the court.  Accordingly, the trial court controls the offender['] s eligibility to participate in these programs by fixing the percentage of confinement required before participation in this program is permitted," citing *Lewis*).

*Coley* made no mention of *Lewis* and no later cases have discussed the relationship, if any, between the two.  The County argues that, in light of *Lewis* and its interpretation of Tennessee law, it was appropriate to determine that, if Ray was not eligible for trusty credits until he had served seventy-five percent of his sentence, as determined by the trial judge who controlled that eligibility, he had no liberty interest in those credits even if he worked while incarcerated.

## QUESTIONS OF LAW

Because the Court finds that Tennessee case law appears to be unsettled, pursuant to Tennessee Supreme Court Rule 23, the following questions of state law are hereby CERTIFIED to the Supreme Court of Tennessee:

1. Does a Tennessee sentencing court or the county sheriff possess the ultimate authority to determine the eligibility of a felon sentenced to serve a split confinement sentence in a local jail or workhouse to participate in a trusty work program and, therefore, be entitled to work credits under Tennessee Code Annotated §§ 41-2-146 or 41-2-147?

2. In the event that a Tennessee sentencing court issues an improper or potentially improper sentence, does a sheriff have a duty under Rule 36.1 of the

Tennessee Rules of Criminal Procedure or under any other Tennessee law to challenge the sentence, or is it the sole duty of the criminal defendant, the defense attorney and the district attorney to challenge an illegal sentence?

Pursuant to Tennessee Supreme Court Rule 23, § 3, the Court incorporates by reference its March 16, 2016, Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (D.E. 36). The Clerk of Court, in accordance with Tennessee Supreme Court Rule 23, § 4, is DIRECTED to serve copies of this Certification Order upon all counsel of record in this cause and file with the Clerk of the Supreme Court of Tennessee in Nashville this Certification Order and a certified copy of Docket Entry 36, under the seal of this Court, along with proof of service.

The Court designates Jason Ray as the moving party for purposes of certification. The parties and their counsel of record appear below:

For Plaintiff, Jason Ray:

James Bryan Moseley
MOSELEY & MOSELEY, ATTORNEYS AT LAW
237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
615.254.0140

Leanne A. Thorne
LAW OFFICE OF LEANNE AUSTIN THORNE
Post Office Box 262
777 West Church Street
Lexington, Tennessee 38351
731.968.9810

For the Defendant, Madison County, Tennessee:

James I. Pentecost
Nathan Daniel Tilly
PENTECOST, GLENN & RUDD, PLLC
106 Stonebridge Boulevard
Jackson, Tennessee 38305

731.668.5995

It is further ORDERED that all proceedings in this matter are STAYED pending the Tennessee Supreme Court's response to this Certification Order.

IT IS SO ORDERED this 26th day of July 2016.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE