# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | | |
|---|---|---|---|
| JASON RAY, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| V. | ) | No: | 1:15-1015-STA-egb |
| | ) | | |
| MADISON COUNTY, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT
## AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Jason Ray filed this action pursuant to 42 U.S.C. § 1983 alleging that Defendants Madison County and various officers with the Madison County Sheriff's Department and Madison County Jail violated his rights under the Fourteenth Amendment of the United States Constitution by failing to apply work credits to his jail sentence. On March 16, 2016, the Court granted summary judgment to the individual defendants on the basis of qualified immunity but denied summary judgment to Madison County because there was an issue of fact as to whether Madison County had a proper procedure in place for Plaintiff to challenge the jail officials' decision not to provide him work credits. (Order P. Grt'ing & P. Dny'ing Mot. Summ. J., ECF No. 36.)

At the pre-trial conference, the Court determined that the underlying issue of whether Plaintiff was entitled to work credits hinged upon the interpretation of Tennessee's sentencing statutes. Thus, the Court certified the following two questions to the Tennessee Supreme Court:

> Does a Tennessee sentencing court or the county sheriff possess the ultimate authority to determine the eligibility of a felon sentenced to serve a split confinement sentence in a local jail or workhouse to participate in a trusty work program and, therefore, be entitled to work credits under Tennessee Code Annotated §§ 41-2-146 or 41-2-147?

> In the event that a Tennessee sentencing court issues an improper or potentially improper sentence, does a sheriff have a duty under Rule 36.1 of the Tennessee Rules of Criminal Procedure or under any other Tennessee law to challenge the sentence, or is it the sole duty of the criminal defendant, the defense attorney, and the district attorney to challenge an illegal sentence?

(Order, ECF No. 73.) The Tennessee Supreme Court concluded that (1) for split confinement sentences, Tennessee trial judges are authorized to fix a percentage that a defendant must serve in actual confinement before becoming eligible to participate in a work program and earn work credits and (2) sheriffs in Tennessee have no duty to challenge an inmate's sentence as improper or potentially improper. *Ray v. Madison Cty., Tennessee,* 536 S.W.3d 824, 842 (Tenn. 2017).[1] The case was then returned to this Court.

Plaintiff has now filed a motion to amend his complaint in which he seeks "to conform the complaint to the Tennessee Supreme Court's Judgment on the Certified Questions entered August 16, 2017." (Mot. p. 1, ECF No. 84.) Defendant opposes the amendment. (ECF No. 85.) Defendant has filed a motion for summary judgment (ECF No. 86), Plaintiff has filed a response to the motion (ECF No. 87), and Defendant has filed a reply to the response. (ECF No. 90.) For the reasons set forth below, the motion to amend is **DENIED**, and the motion for summary judgment is **GRANTED**.

<u>Motion to Amend</u>

Federal Rule of Civil Procedure 15(a)(2) provides, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "Leave to file an amended complaint ... should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-

---

[1] (Tenn. Sup. Ct. Op., ECF No. 79.)

movant, or futility." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 519 (6th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A motion to amend is futile if the amended complaint would not survive a motion to dismiss. *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005); *see also Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 - 46 (6th Cir. 1992) (same).

In the present case, in light of the ruling from the Tennessee Supreme Court, Plaintiff acknowledges that his split sentence was not illegal, as alleged in the original complaint, and that the sentencing court has the authority to determine an inmate's eligibility to earn work credits. (Pl's Memo. p. 2, ECF No. 84-1.) Instead, Plaintiff alleges in the proposed amended complaint that his constitutional rights were violated when Madison County allowed him to work while he was in jail even though he was not entitled to receive work credits and did not receive monetary compensation for the hours that he worked.

Specifically, Plaintiff's proposed amended complaint alleges that Defendant Madison County knew or should have known that only eligible inmates could be placed in the work program and should have known that he was not eligible since Circuit Court Judge Don Allen "explicitly" stated that he was not eligible for the program. (Prop. Amd. Cmplt. ¶ 16, ECF No. 84-2.) Plaintiff further alleges that he should have been paid "a reasonable hourly wage for the hours worked for Madison County in a program he was ineligible for." (*Id.* at ¶ 20.) Additionally, he alleges that his "constitutional rights were violated when he was instructed to work and assured sentence credits he was not eligible to receive." (*Id.* at ¶ 21.) Plaintiff contends that these actions by Madison County violated his liberty interest under the Fourteenth Amendment. (*Id.* at ¶¶ 23, 24.) He contends that Madison County "failed to implement a policy and/or procedure to place only 'eligible' inmates" in the work program and "failed to properly train employees, including the Jail

3

Administrator, to place only 'eligible' inmates" in the work program. (*Id.* at ¶¶ 27, 28.)

Defendant Madison County asserts that the motion to amend the complaint should be denied because the proposed amendment would be futile and would not survive a motion to dismiss. According to Defendant, Plaintiff's allegations that Defendant placed him in the work program in violation of Judge Allen's order fail to set forth a constitutional claim because courts have routinely held that putting inmates to work is not a violation of their constitutional rights, nor does failing to pay an inmate wages for his work violate his constitutional rights. Furthermore, Judge Allen's order did not state that Plaintiff could not work while in jail but, instead, stated that he could not earn work credits until he had served 75% of his sentence. The Court finds Defendant's arguments to be meritorious.

It is well-established that, although no State may "deprive any person of life, liberty, or property, without due process of law, … only a limited range of interests fall within this provision." *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), *overruled on other grounds by Sandin v. Connor*, 525 U.S. 472 (1995) (citation omitted). In *Sandin*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. *Sandin* made clear that a prisoner's federal constitutionally protected liberty interest is implicated only when a sanction "will inevitably affect the duration of his sentence" or if a condition of imprisonment "imposes atypical and significant hardship on [an] inmate in relation to the ordinary incidents of prison life." *Id.* at 484 - 87.[2] Thus, "regardless of

---

[2] Because the duration of Plaintiff's sentence was not affected by the constitutional violations alleged in the proposed amended complaint, the Court considers only whether those alleged violations constituted "an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life."

the source – a regulation, a statute, or a court order - a liberty interest is not implicated in a condition of sentence unless an 'atypical hardship' must be endured in its absence." *Carter v. McCaleb*, 29 F. Supp. 2d 423, 428-29 (W.D. Mich. 1998) (quoting *Sandin*).[3] As the *Sandin* Court noted, "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." 515 U.S. at 485.

In the absence of a liberty interest, no process is constitutionally due. *Carter,* 29 F. Supp. 2d at 428-29 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). That is, the "Constitution defers to essentially any state action until a liberty or property interest is implicated. Whether Defendants could or should have done things differently, the Constitution takes no position." *Id.*

Courts have consistently found that "prisoners have no constitutionally protected liberty interest in prison employment, vocational, rehabilitation, and educational programs based on the Fourteenth Amendment." *See Frantz v. Michigan Dep't of Corr.*, 2011 WL 3100564 at *7 (W.D. Mich. July 25, 2011) (collecting cases). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter v. Tucker*, 2003 WL 21518730 at *2 (6th Cir. July 1, 2003) (citations omitted); *accord Rutledge v. Tennessee Dep't of Corr.*, 2013 WL 3830198 at *2 (M.D. Tenn. July 22, 2013), and *Miller v. Campbell*, 108 F. Supp. 2d 960, 967 (W.D. Tenn. 2000).

---

[3] To establish an Eighth Amendment deliberate indifference to workplace safety claim, prisoners must show that prison officials "knowingly compel[led them] to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful." *Jones v. Michigan*, 698 F. Supp. 2d 905, 914 (E.D. Mich. 2010) (quoting *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977)). Plaintiff has not alleged that the work he performed was "beyond his strength, endangered his life or health, or caused undue pain" necessary to state a claim under the Eighth Amendment.

Notably, "the sanction of 'extra duty' work does not amount to an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Bailey v. Ingram*, 2014 WL 5431300 at *7 (E.D. Ky. Oct. 24, 2014) (collecting cases); *see also Clayton v. Morillo*, 2009 WL 4642002 at *2 (W.D. Ky. Dec. 2, 2009) (finding that the imposition of extra days of additional work is not an "atypical and significant hardship"). *C.f. Canell v. Multnomah Cty.*, 141 F. Supp. 2d 1046, 1058 (D. Or. 2001) ("Compelling an inmate to clean his surroundings is permissible as a matter of law and does not implicate any due process right." (citing *Bijeol v. Nelson*, 579 F.2d 423, 425 (7th Cir. 1978) and *Hause v. Vaught*, 993 F.2d 1079 (4th Cir. 1993))).

When "an interest is not a protected one, there is no cognizable harm to the individual when deprived of that interest." *Orr v. Hawk*, 156 F.3d 651, 654 (6th Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Because work is a typical condition of confinement, being required to work while in jail without compensation, either through sentence reduction credits or wages, does not constitute the type of "atypical, significant deprivation in which a State might conceivably create a liberty interest" as set forth in *Sandin*. Because there is no constitutional or state requirement that Jail officials allow only work credit eligible inmates in its work program, *a fortiori*, the lack of a policy providing that only "eligible" inmates may work, did not violate Plaintiff's rights. Therefore, allowing Plaintiff to add his proposed claims would be futile, and the motion to amend the complaint is denied.

Motion for Summary Judgment

<u>Standard of Review</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review all the evidence and draw all reasonable inferences in favor of the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Statement of Facts

The following facts are undisputed for the purpose of deciding this motion. (Order P. Grt'ing & P. D'nying Mot. Summ. J., ECF No. 36; Def's Resp. to Add. Facts, ECF No. 90-1.)

On July 18, 2013, Circuit Court Judge Allen sentenced Plaintiff to a "split confinement" sentence under Tenn. Code Ann. § 40-35-306. Pursuant to Judge Allen's ruling, Plaintiff was sentenced to ten years, to serve eleven months and twenty-nine days in the Madison County Jail. Plaintiff would then serve the remaining nine years and one day on probation. Plaintiff was required to serve 75% of his sentence prior to being eligible for "work release, furlough, trusty status, and rehabilitative programs." Thus, pursuant to the state court order, Plaintiff was not eligible to earn work credits until he served 75% of his sentence.

The Madison County Jail has a trusty program that allows inmates to work in the kitchen or the laundry room or cleaning the cells. Madison County has policies that govern eligibility for the trusty program. Madison County was aware that prisoner eligibility for work programs could be directed by the court. Trusty inmates provide a benefit to the Jail.

Inmates eligible under their judgments are statutorily entitled to "2 for 1" credit or two days credit for each one day worked.

Inmates who become trustees sign an Inmate Worker Contract which provides that, if an inmate loses worker status due to disciplinary issues, he receives no "work credit."

Individuals who are ineligible to obtain work credits are, at times, allowed to work without the benefit of work credits. Plaintiff never signed a document indicating that he acknowledged he was working without the benefit of credit.

On July 23, 2013, Plaintiff began working in the kitchen of the Jail cooking, cleaning, and serving meals to other inmates. It is common for an inmate worker in the kitchen to awaken daily between 2:30 and 3:00 a.m. to prepare breakfast to be served by 4:30 a.m. However, Plaintiff testified that he usually "got up around 3:30" to start preparing breakfast to be served at 5:30 a.m.

8

After serving breakfast, he would go back to the pod. After having a break, he would come back to the kitchen and begin preparing lunch as well as dinner at around 7:00 or 7:30 a.m. He prepared lunch and dinner at the same time because dinner consisted of bologna sandwiches and peanut butter sandwiches. Plaintiff also received a break to eat and ate with the other inmate workers. Plaintiff received "benefits" of having access to as much tea as he wanted, wearing tennis shoes instead of sandals, and being allowed to reside in the trusty only pod.

At times, Plaintiff worked in the Jail's laundry facility and performed janitorial functions in addition to his work in the kitchen.

Plaintiff worked as a trusty every day that he was incarcerated. After Plaintiff was mistakenly released in October 2013 due to a sentence miscalculation, Judge Allen learned that Plaintiff was no longer incarcerated, called jail officials to inform them that Plaintiff had been released too early, and instructed them that, pursuant to the 75% eligibility provision in Plaintiff's judgment, Plaintiff was not eligible to earn work credits until he served 75% of his sentence.[4]

When Judge Allen brought the release error to the Jail's attention, Plaintiff was contacted about the error, and self-reported to the Madison County Jail on November 17, 2013. Upon his return, Plaintiff was immediately placed in a white jumpsuit, housed in the trusty pod, and put back to work in the kitchen.

On November 25, 2013, through his attorney, Plaintiff went before Judge Allen on a motion to suspend the balance of his sentence. Judge Allen denied the motion and again stated that he did

---

[4] This Court has previously found that, even though Plaintiff was not eligible for work credits, he was eligible for "good time credits." "Good time credits provide an inmate a one-quarter deduction from his sentence for good behavior. He cannot receive good time and work credits at the same time." (Order P. Grt'ing & P. Dny'ing Mot. Summ. J. p. 6 n. 4, ECF No. 36.)

not want Plaintiff to receive trusty credits.

After returning from court on November 25, 2013, Plaintiff worked in the kitchen daily until he was released on April 16, 2014. Plaintiff did not have any disciplinary issues while incarcerated at the Madison County Jail, and his trusty status was never revoked.

Analysis

As discussed above, Plaintiff filed this action alleging that Madison County and Jail officials violated his Fourteenth Amendment rights by refusing to apply work credits to his sentence. Plaintiff contended that the 75% eligibility provision in the state court judgment was illegal under Tennessee law and that the 75% eligibility provision should have been disregarded by Madison County Jail officials. Subsequently, the Tennessee Supreme Court determined that Tennessee trial judges are authorized to fix a percentage that a defendant must serve in actual confinement before becoming eligible to participate in a work credit program and that Tennessee sheriffs have no duty to challenge an inmate's sentence as improper or potentially improper. *Ray,* 536 S.W.3d at 842.

Defendant Madison County has moved for summary judgment on the ground that, because Plaintiff was not eligible to earn work credits pursuant to the judgment entered by Judge Allen, he never possessed a liberty interest in those credits and, therefore, suffered no constitutional deprivation since Defendant did not hold him beyond his sentence. Plaintiff now acknowledges that his sentence was "not illegal" and that the sentencing court had the authority to determine his eligibility to earn work credits. (Mot. to Amd. pp. 2-3, ECF No. 84-1.) However, Plaintiff contends that Defendant Madison County is liable for placing him in a work program that he was not eligible to participate in.

To maintain an action under 42 U.S.C. § 1983 based on a violation of procedural due process, a plaintiff must show that: (1) a liberty or property interest at stake is a protected property right under the Fourteenth Amendment, (2) the deprivation of the interest contravened notions of due process, and (3) state or administrative processes and remedies to redress the alleged violation are inadequate. *See Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 587–88 (6th Cir. 2004). Accordingly, in order to set forth a procedural due process claim, a plaintiff must first show that he has a constitutionally protected property or liberty interest. In the present case, Plaintiff had no protected liberty interest in earning work credits. *See Frazier v. Hesson*, 40 F. Supp. 2d 957, 964 (W.D. Tenn. 1999) (stating that "there is no right under the Constitution to earn sentence credits," and, thus, the plaintiff had "no actual liberty interest at stake" in earning those credits) (citing *Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992)). "In Tennessee ... the effect of sentence credits is only to affect a release eligibility date, which is nothing more than a unilateral expectancy. It is thus devoid of due process protections." *Id.* at 966. *Accord Kirk v. CoreCivic*, 2017 WL 2306185 at *3 (M.D. Tenn. May 25, 2017) (citing *Frazier*); *Green v. Tennessee Dep't of Correction*, 2016 WL 166061 at *2 (E.D. Tenn. Jan. 13, 2016) (citing *Frazier*), *appeal dismissed* (Mar. 25, 2016). And, as discussed above, Plaintiff had no protected liberty interest in being paid for his work while in jail. Accordingly, any procedural due process claim against Defendant fails unless Plaintiff can show that he had a liberty interest in "not working" while in jail.

According to Plaintiff, Tennessee "created a protected liberty interest under the Fourteenth Amendment when it limited Tennessee Sheriffs' authority to put only 'eligible' inmates to work pursuant to Tennessee Code Annotated § 41-2-147." (Prop. Amd. Cmplt. ¶ 24, ECF 84-2.) This section provides as follows:

11

> (a) The sheriff or administrative authority having responsibility for the custody of any person sentenced to a local jail or workhouse pursuant to the provisions of former § 40-35-302, § 40-35-306, § 40-35-307 or § 40-35-311 or present § 40-35-302, § 40-35-306, § 40-35-307 or § 40-35-314 shall, when a person has become eligible for work related programs pursuant to those sections, be authorized to permit the person to perform any of the duties set out in § 41-2-123 or § 41-2-146.[5]
>
> (b) Work performed by a prisoner under this section shall be credited toward reduction of the prisoner's sentence in the following manner: for each one (1) day worked on such duties by the prisoner the sentence shall be reduced by two (2) days.
>
> (c) Any prisoner receiving sentence credits under this section shall not be eligible for the sentence reduction authorized by § 41-2-111.

Tenn. Code. Ann. § 41-2-147.

Contrary to Plaintiff's argument, this statute does not limit a sheriff's authority to require an inmate to work; instead, it limits his authority as to when he may place an inmate in a work program for the purpose of earning two for one credits. *Ray,* 536 S.W.3d at 839 (stating that § 41-2-147 "establishes that inmates cannot participate in these work programs and accrue work credits until they have become eligible to do so" and that the "statute clearly conditions the power of a sheriff or administrative authority to permit the prisoner to participate in work programs upon the prisoner having become eligible to do so, and an inmate's eligibility is determined by the percentage fixed in the judgment of the trial court.") Nothing in Tennessee law prohibits a Sheriff

---

[5] *See* Tenn. Code Ann. § 40-35-314(b)(1) (providing the sentencing court the authority to set an eligibility percentage for "all programs except parole" not an eligibility percentage for "working" in general); Tenn. Code Ann § 40-35-302(d) (providing the sentencing court the authority to set an eligibility percentage for misdemeanor inmates to participate in "work release, furlough, trusty status or related rehabilitative programs", not an eligibility percentage for "working" in general); Tenn. Code Ann. § 41-2-147 (providing that when an inmate is eligible to earn two for one credits, a Sheriff has the discretion to allow that inmate to participate in work programs in order to earn "two for one" credits); Tenn. Code Ann. § 41-2-150 (requiring inmates who are eligible to participate in two for one work programs to participate if placed in the programs by the Sheriff).

from requiring an inmate to work even though he is ineligible to earn work credits. Accordingly, even if Tennessee law could create a liberty interest in "not working," it has not done so.

Moreover, state laws and prison regulations do not create a liberty interest unless they affect the duration of confinement. *See Frazier*, 40 F. Supp. 2d at 963 (rejecting Frazier's "attempts to circumvent *Sandin*" by contending "that the denial of the opportunity to earn sentence credits will prolong his sentence and, therefore, affect that sentence's duration in a manner implicating his right to due process.")

> After [*Sandin*], prisoners may no longer peruse state statutes and prison regulations searching for the grail of limited discretion. Instead, a prisoner has a liberty interest only in "freedom[s] from restraint . . . imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Frazier*, 40 F. Supp. 2d at 963 (quoting *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995), *cert. denied*, 516 U.S. 1059 (1996)).

In the present case, it is undisputed that Plaintiff was required to work while incarcerated at the Madison County Jail without receiving work credits or wages, although he could earn good time credits. It is also undisputed that he did receive certain benefits such as unlimited access to iced tea, wearing tennis shoes instead of sandals, and being allowed to reside in the trusty only pod. He also received breaks during the day. In light of these facts, the Court finds that the requirement that Plaintiff work without receiving work credits or wages during his relatively short period of incarceration did not impose an "atypical and significant hardship" relative to the "ordinary incidents of prison life" that would create a liberty interest under *Sandin*.[6] Therefore, Plaintiff's right to procedural due process is not implicated.

---

[6] *C.f. Jones v. Baker*, 155 F.3d 810, 814 (6th Cir. 1998) (noting that "relatively minor hardships can give rise to a liberty interest when imposed for an extended period of time").

Finally, even if Plaintiff could show a protected liberty interest in "not working," he cannot show that his right to procedural due process was violated. To establish a procedural due process claim, a plaintiff must show that he did not receive the process "due" him to protect his constitutional interest. *See Sickles v. Campbell County*, 501 F.3d 726, 730 (6th Cir. 2007). If satisfactory state procedures are provided, then no constitutional deprivation occurs. *Id.* at 730-31.

In this case, Madison County did not violate Plaintiff's constitutional rights by not providing an internal "process" to challenge his sentence. As determined by the Tennessee Supreme Court when answering the second certified question, a sheriff has no duty to provide any further process under Tennessee law than what is already provided under Tennessee Rule of Criminal Procedure 36.1 and other legal avenues to challenge a sentence. "Tennessee Rule of Criminal Procedure 36.1 very clearly provides a mechanism for only 'the defendant or the state' to seek correction of an illegal sentence." *Ray,* 536 S.W.3d at 842. While sheriffs "may seek clarification of judgments and orders when necessary to fulfill their duty to see that court orders are enforced…they have no duty to challenge an improper or potentially improper sentence." *Id.* Accordingly, the duty of the sheriff or other Jail officials is only to carry out an inmate's judgment, which is what happened in this case.

The undisputed facts show that Madison County Jail officials, Captain Tom Rudder and Sergeant Chester Long, met with Judge Allen to discuss his directive that Plaintiff was not entitled to work credits. Subsequently, they followed Judge Allen's orders and did not award Plaintiff work credits. It is also undisputed that Plaintiff was provided access to the courts when he appeared in front of Judge Allen on November 24, 2013, to discuss his sentence. Plaintiff did not complain to Judge Allen about working in the Jail, nor did he ever ask to stop working.

Because Plaintiff had an adequate process to challenge his sentence, including the work credit restriction, and/or any disciplinary action taken against him for refusing to work, he cannot show a procedural due process claim even if he can point to a liberty interest. Madison County had no duty to undertake any challenge to Plaintiff's sentence or to provide Plaintiff any further avenues to challenge his sentence. Thus, Plaintiff has no viable procedural due process claim, and Defendant Madison County is entitled to judgment as a matter of law.

In summary, Plaintiff's motion to amend is **DENIED**, and Defendant Madison County's motion for summary judgment is **GRANTED**. Judgment will be entered in favor of Defendant.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: July 17, 2018.